IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

|  |  |  |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | CIVIL ACTION NO. |
| Plaintiff, | ) ) | C O M P L A I N T |
| v. | ) ) | JURY TRIAL DEMAND |
| MEDIACOM COMMUNICATIONS CORPORATION, a New York corporation, | ) ) ) |  |
| Defendant. | ) ) |  |

NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 (Title VII) and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of sex and to provide appropriate relief to Crystal Vinson (Vinson), Breanna Caldwell (Caldwell), and a class of female employees (Class Members) who were adversely affected by such practices. The EEOC alleges that Defendant Mediacom Communications Corporation (Defendant) engaged in intentional discrimination against Vinson, Caldwell, and the Class Members by subjecting them to a hostile work environment based on their sex, female, and by failing to take prompt and effective remedial action to remedy the hostile work environment, in violation of Title VII.

JURISDICTION AND VENUE

1.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) ("Title VII") and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States Court for the Middle District of Georgia, Valdosta Division.

PARTIES

3.      Plaintiff, the Equal Employment Opportunity Commission (the Commission or EEOC), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4.      At all relevant times, Defendant, a New York Corporation, has continuously been doing business in the State of Georgia and the City of Valdosta, and has continuously had at least 15 employees.

5.      At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

ADMINISTRATIVE PROCEDURES

6.      More than thirty days prior to the institution of this lawsuit, Vinson and Caldwell filed charges with the Commission alleging violations of Title VII by Defendant.

7.      On August 17, 2018, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Title VII was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

8.      On August 30, 2018, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

9.    All conditions precedent to the institution of this lawsuit have been fulfilled.

<u>STATEMENT OF CLAIMS</u>

10.    Since at least September 2016, Defendant has engaged in unlawful employment practices at its Valdosta, Georgia facility, in violation of Section 703 of Title VII, 42 U.S.C. 2000(e)-2(a)(1), by subjecting Vinson, Caldwell and other female employees to a hostile work environment based on their sex, female.

11.    Vinson was hired by Defendant in May 2016. In late August  2016, after several weeks of training, Vinson began working as a Customer Service Representative ("CSR") in Defendant's Valdosta facility.

12.    Vinson worked alongside other CSRs in cubicles that were open to view. Vinson's supervisor worked in a cubicle located behind Vinson.

13.    In September 2016, a male Defendant employee, who also worked as a CRS, began to harass Vinson by touching her inappropriately, rubbing her on her lower back through an opening in her work chair, and making inappropriate comments about how Vinson should dress.  The alleged harasser was located in a cubicle next to Vinson.  Vinson repeatedly told the alleged harasser to stop and would scoot up her chair to avoid him.

14.    Because her supervisor was seated behind her, Vinson contends that he observed the alleged harasser's inappropriate behavior towards her.  However, the supervisor failed to remedy the situation.

15.    On or about September 17, 2016, while working in a back area where no other employees were present, the alleged harasser pushed his chair up to Vinson, touched her with one hand, and pulled out his penis with the other hand.  Vinson immediately stood up and went

outside to call her supervisor, who was not working that day, to complain.  The supervisor told Vinson that he would contact the supervisor in charge and report the incident.

16.     Because she was still outraged about the incident, Vinson went to the restroom. While there, a female supervisor came into the restroom and asked Vinson what happened. The supervisor told Vinson that she would be moved to another work station and to tell her co-workers that she was having computer problems.

17.     The following week, Vinson spoke with Defendant's Human Resources Director who informed her that no action would be taken against the alleged harasser because it was a "he said/she said" situation.

18.     On or about October 20, 2016, Vinson reported to Defendant's Assistant Chief Executive Officer that she was still being harassed and, particularly, that she did not feel safe at work because the alleged harasser had begun parking next to her car in the parking lot.

19.     A few days later, Vinson met with Defendant's Senior Manager who also told Vinson that no action was going to be taken against the alleged harasser.  Vinson requested that her shift be changed so that she would not have to work with the alleged harasser and for an escort to her car because she often worked late at night.  Vinson's shift was changed but she still had some overlap with the alleged harasser's schedule.

20.     The alleged harasser continued to harass Vinson by intentionally bumping into her in the hallway, running his arm along the back of her chair as he passed by, staring and smirking at her, and, sometime in January 2017, he touched Vinson's breast.  Vinson complained in or around March 2017, but no action was taken.

21.     On July 17, 2017, Vinson resigned from her job because of the on-going harassment and Defendant's failure to remedy the situation.

22.    Caldwell was hired by Defendant on or about October 17, 2016.  In late December 2016, after weeks of training, Caldwell began working as a CSR in Defendant's Valdosta facility.

23.    Like Vinson, Caldwell worked in a cubicle in an open area.  Caldwell was also supervised by the same supervisor as Vinson.

24.    In February 2017, the alleged harasser began to sexually harass Caldwell by following her, staring at her, watching her movements, parking his car next to hers in the parking lot, following her out of the room when she left and walking toward her threateningly without speaking to her.

25.    On or about March 13, 2017, Caldwell complained about the harassment to a Defendant supervisor.  The supervisor told Caldwell that other women had complained about the alleged harasser and she would report the behavior to Human Resources.  In response to her complaint, like Vinson, Caldwell was moved to a new work location and was told to tell others that she was having computer problems.

26.    Despite her complaint, the alleged harasser continued his harassment of Caldwell, standing up to stare at her when she stood up to walk anywhere, staring at her during her work and watching her around the facility.  On one occasion, the alleged harasser followed her out to the parking lot and left only when Caldwell's husband came to pick up Caldwell.

27.    Caldwell complained to her supervisor but to no avail.  As such, on or about April 10, 2017, Caldwell resigned.

28.    Shortly after she resigned, Caldwell spoke with Defendant's Human Resources Manager and told her that she did not feel safe because the alleged harasser was following her to

her car after work.  The manager asked Caldwell to return to work and assured her that an investigation would be conducted.

29.     Caldwell agreed to return to work.  However, on or about April 17, 2017, the alleged harasser was waiting for her at her car when she got off from work.  He retreated when he saw that Caldwell's husband had arrived..

30.     The following week, Caldwell reported the parking lot incident to several management employees and stated that she would have to resign out of fear for her safety.  On or about May 2, 2017, Caldwell spoke with a Respondent official as part of its investigation into the sexual harassment complaints.

31.     On or about May 9, 2017, Defendant's Human Resources Manager again asked Caldwell to return to work.  Caldwell stated that she could not unless the alleged harasser was terminated or if her schedule could be set where she would not have to work the same hours as the alleged harasser.  The manager told Caldwell that she would check into her request.

32.     The manager never responded to Caldwell.  Instead, on or about May 30, 2017, Caldwell received a termination letter from Defendant.

33.     At all times, Vinson and Caldwell were offended by and objected to the alleged harasser's conduct.

34.     The harassing conduct described above occurred daily and continued throughout Vinson and Caldwell's employment.

35.     Upon information and belief, other female employees were subjected to sexual harassment by the alleged harasser and complained to Defendant about harassment.  Defendant failed to take prompt and effective remedial action based on their complaints.

36.     The effect of the practices complained of above has been to deprive Vinson, Caldwell, and other female employees of equal employment opportunities and otherwise adversely affected their status as employees because of their sex.

37.     The unlawful employment practices complained of above were intentional.

38.     The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Vinson, Caldwell, and other female employees.

<u>PRAYER FOR RELIEF</u>

Wherefore, the Commission respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from maintaining a sexually hostile work environment and otherwise engaging in any other employment practices which discriminate against employees based on their sex, female.

B.     Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for women and which eradicate the effects of its past and present unlawful employment practices.

C.     Order Defendant to make Vinson, Caldwell, and other female employees whole, by providing appropriate back pay and front pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement.

D.     Order Defendant to make Vinson, Caldwell, and other female employees whole, by providing compensation for past and future pecuniary losses resulting from the unlawful

employment practices described above, including relocation expenses, job search expenses, and other expenses in amounts to be determined at trial.

      E.     Order Defendant to make Vinson, Caldwell, and other female employees whole, by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices  described above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

      F.     Order Defendant to pay punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

      G.     Grant such further relief as the Court deems necessary and proper in the public interest.

      H.     Award the Commission its costs of this action.

<u>JURY TRIAL DEMAND</u>

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully Submitted,

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

JAMES L. LEE
Acting General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

ANTONETTE SEWELL
Regional Attorney

LAKISHA DUCKETT ZIMBABWE
Supervisory Trial Attorney

8

*s/ James W. Allen*
Senior Trial Attorney
Georgia Bar No. 016075
james.allen@eeoc.gov
U.S. Equal Employment Opportunity
Commission
Savannah Local Office
7391 Hodgson Memorial Drive
Suite 200
Savannah, Georgia 31406-2579
Phone - (912) 920-4486
Facsimile - (912) 920-4484